# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORDIS DOTSON, ) | 1:10-cv-00243 SKO |
| ) | |
| Plaintiff, ) | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| ) | |
| v. ) | (Doc. 2) |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____ ) | |

## BACKGROUND

Plaintiff Jordis Dotson ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act. 42 U.S.C. § 1383(c)(3). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 8, 9.) On April 8, 2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

**FACTUAL BACKGROUND**

Plaintiff was born in 1969, has either a 10th or 12th grade education, and has never worked. (Administrative Record ("AR") 116, 22, 171.) Plaintiff filed a prior SSI application on March 20, 2006, alleging disability due to an oversized foot and glaucoma; the application was denied on July 28, 2006, and Plaintiff did not appeal. (AR 39-50, 55-58.) Plaintiff filed the current application for SSI benefits on June 6, 2007, alleging disability beginning January 1, 2002, for the same ailments. (AR 116-21, 47-54.)

**A.     Medical Evidence**

There are no treating physician records. There are records from two consultative examining physicians and four reviewing physicians. (AR 14, 209-13, 214-18, 219-20, 230-36, 237-43, 244-45.)

On June 10, 2006, in support of Plaintiff's prior SSI application, Plaintiff was seen by Steven Stoltz, M.D. (AR 209-13.) Dr. Stoltz diagnosed Plaintiff with left foot edema/swelling, obesity, and bilateral glaucoma, and indicated the Plaintiff's "main medical issue" centered around "the edema that she has focally in the left foot." (AR 213.) Dr. Stoltz was "unclear" as to the "etiology of the swelling and edema" but nonetheless concluded that Plaintiff "would have no restrictions on sitting activities" and that "[s]tanding for two to four hours in a normal eight hour work day would probably be tolerable but she would need more frequent rest breaks for evaluation[2] [sic] of her left leg." (AR 213.) Dr. Stoltz further indicated that Plaintiff "could walk short distances but probably would require the use of her cane" and that "[l]ifting and carrying should be tolerable at ten pounds." (AR 213.)

On July 22, 2006, E.A. Fonte, M.D., reviewed Plaintiff's records and determined that Plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally, could stand and walk for at least two hours in an eight hour workday, and could sit for about six hours in that same time period. (AR 215.) Plaintiff had no push/pull limitations and was limited to occasional climbing, balancing, stooping, and crawling. (AR 215-16.) No other environmental limitations were assessed.

---

[2] Plaintiff contends that Dr. Stoltz meant elevation, not evaluation, of the left leg. (Doc. 14, 6:18-19.) Defendant appears to agree with this contention.

2

(AR 214-18.) On February 23, 2007, state agency physician James V. Glaser, M.D. affirmed Dr. Fonte's findings and further determined that Plaintiff had "no severe work restrictions." (AR 228-29.)

On August 15, 2007, Plaintiff was examined by Rustom F. Damania, M.D. in connection with the current SSI application. (AR 231-36.) Dr. Damania diagnosed Plaintiff with obesity, hypertension, bronchial asthma, and bilateral lymphedema. (AR 235.) Dr. Damania determined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, could stand and walk two to four hours in an eight-hour day, and could sit for six hours. (AR 236.) He further noted that "[n]o assistive device is necessary for ambulation." (AR 236.) Dr. Damania found no postural or manipulative limitations but noted that due to her edema Plaintiff would have unspecified "workplace limitations." (AR 236.)

On August 27, 2007, R.D. Fast, M.D. reviewed Plaintiff's medical records and opined that Plaintiff could lift and carry 10 pounds, could stand and walk for at least two hours, and could sit for about six hours in an eight-hour work day. (AR 238.) Plaintiff had no other limitations. (AR 237-41.) On March 17, 2008, state agency physician Brian J. Ginsburg, M.D. affirmed the sedentary limitations and noted that Plaintiff had not reported any worsening of her condition. (AR 244-45.)

**B.    Administrative Hearing**

For the current application, the Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 65-68, 72-77, 78.) On July 21, 2009, ALJ Sharon L. Madsen held a hearing in which Plaintiff and a vocational expert ("VE") testified. (AR 17-38.)

**1.    Plaintiff's Testimony**

At the hearing, Plaintiff testified that she had one adult child and lived with a friend who would take her to run errands and to her appointments. (AR 21-22.) Plaintiff did not have a driver's license and did not take the bus. (AR 22.) She stated that she had a 10th grade education, although a prior Medical/Vocational Decision Guide indicated that she had completed high school. (AR 22,

171.) Plaintiff further testified that she could not read or spell but had previously stated on a Disability Report that she could read, write, and understand English. (AR 27, 165.)

Plaintiff testified that she needs help preparing food, getting in and out of the bathtub, getting dressed on some days, and combing her hair. (AR 23.) Plaintiff said she needs help preparing food and was unable to use a microwave, make a sandwich, or pour a bowl of cereal. (AR 23.) Plaintiff did not do any chores or any shopping, had no hobbies, and did not engage in any regular social activity, although she did socialize at a friend's house "every now and then." (AR 23.) Plaintiff described her typical day as either lying in bed or sitting with her feet elevated, trying to watch television. (AR 24.)

Plaintiff testified that her left foot would swell up to "three times the size that it should be" and that "it swells up even more by the day." (AR 24.) Additionally, in the two months prior to the hearing, the swelling had been "transferring" to her right foot. (AR 25.) However, Plaintiff was not receiving any medical care because she had no insurance and was treating her condition by elevating her foot. (AR 25.) Her left foot had been swollen for "like 11 years, maybe more" and she had seen a physician when the problem first started. (AR 25.) Plaintiff testified that the physician told her that the swelling was due to "tissue" not fluid, and that there was "nothing that they can do about it." (AR 25.) Plaintiff's feet were in constant "stabbing pain." (AR 26.) Plaintiff indicated that she also has glaucoma, asthma, and a learning disability. (AR 26-28, 30.) Plaintiff said that she believed she could carry "about a pound," that she could only sit for "[n]o more than five [to] ten seconds at the most," and that she could stand for "five to ten minutes." (AR 28.) Plaintiff said she was able to only walk approximately ten feet. (AR 28.)

**2.    VE Testimony**

VE Judith Najarian testified at the hearing. (AR 32-35.) The ALJ hypothecated to the VE a person of claimant's age, education, and work background who could lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk six hours a day; and who required a sit/stand option. (AR 32.) The VE testified that there were positions such as the cashier II, facility rental clerk, and food and beverage order clerk which could accommodate Plaintiff's limitations. (AR 32-33.) The ALJ then hypothecated a person with the same characteristics but who could stand

or walk for two to four hours and sit for six hours, without a sit/stand option. The VE testified that there were jobs which would accommodate Plaintiff, including hand packers such as an ampoule sealer and assemblers such as fishing reel assembler. (AR 33-34.) The same positions existed when the ALJ hypothecated a person who had the same limitations but required an assistive device for ambulation. (AR 34.) When the ALJ hypothecated a person with those limitations but with no fine visual acuity, the VE testified that there were no jobs available. (AR 34.)

Plaintiff's counsel questioned the VE and hypothecated a person who could lift and carry 20 pounds occasionally and 10 pounds frequently, and who could sit, stand, or walk six hours a day but required more frequent rest breaks in addition to a break of at least an hour or two a day to elevate her feet. (AR 35.) The VE testified that there were no jobs available and that "you don't get an extra one to two hours a day of break and keep a job." (AR 35.)

**C.     ALJ's Decision**

On September 29, 2009, the ALJ issued a decision finding Plaintiff not disabled. (AR 7-16.) Specifically, the ALJ found that (1) Plaintiff had not engaged in substantial gainful activity since the application date of June 6, 2007; (2) Plaintiff had impairments of obesity and edema of the feet that were considered "severe" based on the requirements in the Code of Federal Regulations; (3) Plaintiff did not have an impairment or combination of impairments that met or equaled one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, could stand and/or walk two to four hours, could sit six hours in an eight hour day, and required the use of an assistive device for standing and walking; (5) Plaintiff has no past relevant work; (6) Plaintiff was a younger individual as defined under 20 C.F.R. § 416.963; (7) Plaintiff had at least a high school education and was able to communicate in English; (8) the transferability of job skills was not an issue because Plaintiff did not have past relevant work; (9) there were jobs that exist in significant numbers in the national economy which Plaintiff could perform based on Plaintiff's age, education, work experience, and condition; and (10) Plaintiff had not been under a disability as defined in the Social Security Act since June 6, 2007, the date of the application. (AR 12-15.)

1    Plaintiff sought review of this decision before the Appeals Council. On November 19, 2009,
2 the Appeals Council denied review. (AR 3-5.) Therefore, the ALJ's decision became the final
3 decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

**D.    Plaintiff's Contentions on Appeal**

On February 11, 2010, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff contends that (1) the ALJ failed to consider the findings of examining physician Dr. Stoltz, whose opinion would support a determination of disability; and (2) the ALJ failed to provide proper credibility findings.

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to

last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting him from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient RFC despite the impairment or various limitations to perform his past work.[3] *Id.* §§ 404.1520(f), 416.920(f). If not, in the Fifth Step, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

**DISCUSSION**

**A.     The ALJ's Consideration of Medical Opinions**

The ALJ indicated that she "considered opinion evidence" and gave Dr. Damania's finding "substantial weight because it is consistent with the overall evidence of [the] record." (AR 13, 14.) On August 15, 2007, Dr. Damania examined Plaintiff in connection with Plaintiff's current SSI application. Dr. Damania determined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, could stand and walk two to four hours out of an eight-hour day with normal breaks to allow for her lymphedema, and could sit for six hours. (AR 236.) No assistive device was necessary for ambulation and there were no postural or manipulative limitations. (AR 236.) Dr. Damania further indicated that due to edema, Plaintiff would have unspecified workplace environmental limitations. (AR 236.) The ALJ noted that Dr. Damania found Plaintiff's gait to be "normal and she had no difficulty entering or leaving the office." (AR 14, 235.)

The ALJ's decision did not refer to the findings of Dr. Stoltz, who on June 10, 2006, examined Plaintiff in connection to her prior SSI application; that application was denied on July 28, 2006, and Plaintiff did not appeal. (AR 209-13, 55-58.) Dr. Stoltz determined that Plaintiff could lift and carry 10 pounds, had no restrictions on sitting activities and that standing for two to four hours would be "tolerable." (AR 213.) Plaintiff could walk short distances but would probably require the use of her cane. (AR 213.) However, Plaintiff needed "more frequent rest breaks" for elevation of her leg. (AR 213.) Plaintiff asserts that Dr. Stoltz's opinion would have supported a finding that Plaintiff was disabled, as the VE testified that there were no jobs available for a hypothetical person who required additional breaks of one to two hours a day to elevate her foot. As such, Plaintiff contends that the ALJ erred in not considering Dr. Stoltz's opinion.

**1.     Legal Standard**

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id.* Where a treating or examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. *Id.* If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. *Id.* at 830-31; *accord Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

However, the ALJ "need not discuss *all* evidence presented" but instead must only "explain why 'significant probative evidence has been rejected.'" *Vincent v. Heckler* 739 F.2d 1393, 1394-95 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir.1981)). Further, a medical opinion is considered uncontroverted if all the underlying medical findings are similar. *See Sprague v. Bowen*, 812 F.2d 1226,1230 (9th Cir. 1987).

**2.     The ALJ Did Not Err in Her Silence as to Dr. Stoltz's Opinions**

Plaintiff contends that the ALJ committed reversible error by failing to include Dr. Stoltz's opinion, which was submitted in connection with the first denied application, as Dr. Stoltz required greater limitations upon Plaintiff than Dr. Damania, and Dr. Stoltz's findings would have supported a determination that Plaintiff was disabled.

Dr. Stoltz rendered his opinion on June 10, 2006, in connection with Plaintiff's March 20, 2006, SSI application for disabilities due to oversized foot and glaucoma; Plaintiff did not appeal the July 28, 2006, denial of that application. (AR 39-50, 55-58.) Plaintiff then filed the current application for SSI benefits on June 6, 2007, alleging disability beginning on January 1, 2002, for the same ailments. (AR 116-21, 47-54.) The ALJ's decision found that Plaintiff was not disabled as of June 6, 2007, the date of the second application. (AR 15.)

SSI benefits are not payable for any months prior to the filing of an application. 20 C.F.R. § 416.335. Thus, the relevant time period concerning Plaintiff's disability for the application currently before the Court began on June 6, 2007, the date of the second application. *See* 20 C.F.R. § 416.335. Dr. Stoltz's opinion rendered almost a year before the filing of the current application is stale and not time-relevant to Plaintiff's current claim of disability, especially in light of the fact that Plaintiff was seen by Dr. Damania on August 15, 2007, a little over one month after the current filing. (AR 231-36.)

In a footnote, Plaintiff asserts that the ALJ should have considered the second application an "implied request to reopen" the first application. (Doc. 14, 7:21-26, n. 1.) A final and binding determination may be reopened for any reason within 12 months of the date of the notice of the initial determination. 20 C.F.R. §§ 416.1487, 416.1488(a). The claimant may request that the claim be reopened, or the Social Security Agency (the "Agency") may reopen the claim on its own initiative. *Id*. at § 416.1487(b). Here, Plaintiff does not state that she requested that the prior decision be reopened. Further, Plaintiff was represented by counsel at the ALJ hearing (AR 17-38); as such, her attorney could have presumably requested that the prior application be reopened but failed to do so.

However, courts have found that the Agency has implicitly reopened a prior claim in instances when the Agency has reconsidered the prior claim on the merits; this is referred to as a *de facto* reopening. The ALJ need not, and frequently does not, specifically state that the prior case has been reopened. *See, e.g., Brown v. Sullivan*, 932 F.2d 1243, 1246 (8th Cir. 1991) ("Where a previously denied claim has been reconsidered on the merits, it is properly treated as having been reopened as a matter of administrative discretion."); *Kane v. Heckler*, 776 F.2d 1130, 1132 (3d Cir. 1985) ("[W]here the administrative process does not address an earlier decision, but instead reviews the entire record in the new proceeding and reaches a decision on the merits, the agency has effectively reopened the prior claims."); *Cleaton v. Sec'y, Dep't of Health & Human Servs.*, 815 F.2d 295, 298 (4th Cir. 1987) (finding that if a claim has been "reconsidered on the merits to any extent . . . it is thereupon properly treated as having been, to that extent, reopened as a matter of administrative discretion." (citing *McGowen v. Harris*, 666 F.2d 60, 65-66 (4th Cir.1981))).

Nonetheless, not every case in which the ALJ discusses a prior application constitutes a reopening of that application, as the ALJ is allowed to make a threshold inquiry into the prior claim without having been deemed to have considered the prior claim on the merits. *See, e.g., Cash v. Barnhart*, 327 F.3d 1252, 1256 (11th Cir. 2003) (finding that there was not a *de facto* reopening of a claim when the ALJ did not consider the merits of the prior application but only determined whether the prior claim involved the same facts and issues); *Rogerson v. Sec'y of Health and Human Servs.*, 872 F.2d 24, 29, n. 5 (3d Cir. 1989) (finding that there was not a *de facto* reopening of a claim when the ALJ considered the additional evidence submitted for the limited purpose of deciding whether a new claim was presented or whether the prior applications should be reopened); *Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cir. 1989) (finding that an ALJ merely reciting evidence accompanying an application does not constitute reopening the prior application).[4]

Here, the ALJ did not consider Plaintiff's prior claim on the merits and thus did not implicitly reopen the first application. Plaintiff admits that the ALJ made "no reference" to the prior application in the ALJ's decision and that the ALJ did not consider whether the current application was an implied request to reopen the prior application. (Doc. 14, 7:26, n. 1). Further, the ALJ only considered whether Plaintiff was disabled as of the June 6, 2007, the date of the current application, and did not consider Plaintiff's disability for any time period covered by the prior, denied application. (AR 15.) As there was not a *de facto* reopening of the prior claim, Dr. Damania's findings on August 15, 2007, a little over a month after the filing of the current application, were the relevant findings for this application, as opposed to Dr. Stoltz's opinion rendered on June 10, 2006, made in connection with the prior application.

Further, even if Dr. Stoltz's determination was not stale, there was no error in the ALJ's failure to mention Dr. Stoltz's findings in the decision. An ALJ is not required to discuss all evidence presented; the ALJ's silence is error only if a physician's determination was dissimilar to

---

[4] The Court notes that the Ninth Circuit has not addressed in a published decision the issue of an implicit reopening of a prior claim. However, unpublished decisions support the findings made here. *See Petersen v. Barnhart*, 213 Fed.Appx. 600, 605 (9th Cir. 2006) (finding that the ALJ did not *de facto* reopen an earlier disability determination when he considered medical evidence from the prior application but did not make a determination on the merits); *Copeland v. Barnhart*, 41 Fed.Appx. 914, 916 (9th Cir. 2002) (finding that the Social Security Commissioner constructively reopened a disability claim when the issues in the prior claim were considered on the merits).

the medical findings of the other physicians and the findings were "significant" and "probative." *See Sprague*, 812 F.2d at 1230; *Vincent*, 739 F.2d at 1394-95. Dr. Stoltz's findings are essentially the same as Dr. Damania – both found that Plaintiff could lift ten pounds and could stand for two to four hours in an eight-hour day. (AR 213, 236.) Dr. Stoltz indicated that Plaintiff would have "no restrictions" on sitting, while Dr. Damania indicated that Plaintiff could sit six hours. (AR 213, 236.) While Dr. Stoltz found that Plaintiff would need more frequent rest breaks to elevate her leg, Dr. Damania also noted that Plaintiff would require "workplace environmental limitations." (AR 213, 236.) The findings of the two doctors are analogous, and there is nothing "significant" or "probative" about Dr. Stoltz's opinion that would counter the determination made by Dr. Damania. Thus, the ALJ was not required to mention Dr. Stoltz's findings in her decision. *Sprague*, 812 F.2d at 1230; *Vincent*, 739 F.2d at 1394-95. Accordingly, the ALJ did not err in her silence as to Dr. Stoltz's records.

The Court further rejects Plaintiff's blanket assertion that Dr. Stoltz's opinion would support a finding of disability. Dr. Stoltz's finding was explicitly considered in the decision for the first application, and Plaintiff was determined to be not disabled. (AR 55-58.) It is thus unclear how consideration of Dr. Stoltz's opinion would now lead to a disability determination. Additionally, Plaintiff's assertion that the VE's testimony supports a finding that Plaintiff was disabled is not supported by the evidence. The VE stated that there were no jobs available for a hypothetical person requiring additional breaks of "at least one to two hours a day in order to elevate her feet." (AR 35.) However, Plaintiff's hypothetical did not accurately reflect Dr. Stoltz's finding, which merely indicated that Plaintiff would require "more frequent rest breaks" but did not state that Plaintiff would require rest breaks of at least one to two additional hours per day. The depiction to the VE of the claimant's disability must be accurate, detailed, and supported by the medical record. *Embrey v. Bowen,* 849 F.2d 418, 422 (9th Cir. 1988). "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir.1984); *see also Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir.1980) (testimony of vocational expert must be reliable in light of medical evidence in order to qualify as substantial evidence). Accordingly, the VE's

testimony concerning the unavailability of jobs for the person hypothecated by Plaintiff is not supported by Plaintiff's medical evidence and therefore lacks evidentiary value.

**B.     Plaintiff's Credibility**

Plaintiff contends that the ALJ failed to set forth legally sufficient reasons for rejecting her subjective complaints. According to the Commissioner, however, the ALJ gave valid reasons for finding Plaintiff not entirely credible. In considering Plaintiff's credibility, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." (AR 13.)

### 1.     Legal Standard

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009); 20 C.F.R. §§ 404.1529, 416.929. Other factors the ALJ may consider include a claimant's work record and testimony from

physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

## 2. The ALJ Provided Clear and Convincing Reasons for Rejecting Plaintiff's Subjective Complaints

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. (AR 17.) Therefore, absent affirmative evidence of malingering, the ALJ's reasons for rejecting Plaintiff's testimony must be clear and convincing. *Vasquez*, 572 F.3d at 591.

Plaintiff appears to argue that the ALJ failed to provide substantial evidence to support the credibility findings because the decision failed to mention Plaintiff's testimony regarding her need to elevate her left foot, which is supported by the objective findings of Dr. Stoltz. However, the ALJ set forth clear and convincing reasons as to why she found Plaintiff's credibility lacking. Specifically, the ALJ indicated that Plaintiff

> is not generally credible. The claimant required help to get in the hearing room and was very dramatic. The claimant has no medical insurance and no medical treatment, but does not seem to have tried to get medical care. She was obese with swollen legs, which she testified was tissue and not fluids. The claimant exaggerated her symptoms and testified she could sit for only 5-10 seconds at a time, but she sat for half an hour during the hearing. She testified she completed the 10th grade, but previously claimed to have graduated from high school. . . . She testified she could not read or spell, but previously stated she could speak, read, write and understand English. . . . She testified that she could not care for her personal needs, but previously stated she was able to care for her personal needs. . . . The objective findings are consistent with the ability to perform sedentary work.

(AR 14) (citations omitted).

In discounting Plaintiff's credibility, the ALJ considered the objective findings of the medical evidence of the record, including Dr. Damania's clinical findings that Plaintiff could stand and/or walk for two to four hours, sit for six hours, and carry up to 20 pounds. (AR 14.) The ALJ found that Dr. Damania's findings were "consistent with the overall evidence of the record." (AR 14.) As noted, *supra*, the findings of Dr. Damania are consistent with the findings of Dr. Stoltz, upon whose opinion Plaintiff's argument relies. Plaintiff's testimony as to her condition, however, was not consistent with the medical findings, as the ALJ noted that Plaintiff testified that she could only stand for five to ten minutes, sit for no more than five to ten seconds, and could only lift one pound.

14

(AR 13.) "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir.1995)). Additionally, the ALJ noted that Plaintiff had not received any medical treatment for her condition. "The ALJ is permitted to consider lack of treatment in [her] credibility determination." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Further, the ALJ observed that Plaintiff was "very dramatic" when entering the hearing room and that she "exaggerated her symptoms" by testifying that she could sit for only five to ten seconds at a time while actually being able to sit through a half hour hearing. (AR 13-14.) "The inclusion of the ALJ's personal observations does not render the decision improper." *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985). The ALJ's observation as to Plaintiff's demeanor may be used to discount Plaintiff's testimony. *See Thomas v. Barhart*, 278 F.3d 947, 960 (9th Cir. 2002) (determining that ALJ's consideration of claimant's demeanor at the hearing where "she seemed to engage in considerable histrionic exaggeration" was a clear and convincing reason to reject claimant's testimony).

Finally, the ALJ noted that Plaintiff made inconsistent statements regarding her education, her cognitive abilities, and her ability to care of her personal needs. (AR 14.) The ALJ may consider whether the Plaintiff's testimony is believable. *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999). "In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony." *Burch*, 400 F.3d at 680; *see also Thomas*, 278 F.3d at 959 (supporting the ALJ's finding that a "lack of candor" in one area "carries over to [a plaintiff's] description of physical pain.") Accordingly, the ALJ made a clear and convincing determination that Plaintiff's inconsistent statements impacted her credibility.

In sum, the ALJ cited clear and convincing reasons for rejecting Plaintiff's subjective complaints regarding the intensity, duration, and limiting effects of her symptoms. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196-97 (9th Cir. 2004) (claimant's contradictory testimony unsupported by objective medical evidence constituted substantial evidence in support of

ALJ's negative credibility determination).  Moreover, the ALJ's reasons were properly supported by the record and sufficiently specific to allow this Court to conclude that the ALJ rejected Plaintiff's testimony on permissible grounds and did not arbitrarily discredit Plaintiff's testimony.  *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010).

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Jordis Dotson.

IT IS SO ORDERED.

**Dated:   May 16, 2011**                     **/s/ Sheila K. Oberto**
                                                           UNITED STATES MAGISTRATE JUDGE